UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORGE SANCHEZ LUPERCIO,
    Petitioner,
v.

Case No. 8:22-cv-566-TPB-TGW
Case No. 8:19-cr-406-TPB-TGW

UNITED STATES OF AMERICA,
    Respondent.
_____

ORDER

Jorge Sanchez Lupercio moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to possess with intent to distribute fentanyl, for which he serves a sentence of 48 months. He claims he received constitutionally ineffective assistance of counsel regarding his guilty plea and at sentencing. Lupercio is entitled to no relief because his claims lack merit.

**I.   Background**

Lupercio and six others were indicted for crimes related to their possession and sale of fentanyl and cocaine. (Crim. Doc. 1) Under a plea agreement, Lupercio pleaded guilty to one count of conspiracy to possess with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Crim. Doc. 135) Lupercio admitted the following facts that support his guilty plea (Crim. Doc. 135 at 19–20):

> Beginning on an unknown date, but no later than in or about November 2018, until on or about March 22, 2019, Defendant Jorge Sanchez Lupercio participated in an

1

unlawful agreement with others to possess with intent to distribute 400 grams or more of fentanyl in the Middle District of Florida.

On November 16, 2018, a DEA confidential source (CS) met with Sanchez Lupercio and two additional co-conspirators (CC1 and CC2) to coordinate a purchase of a kilogram of heroin and 1,000 oxycodone pills by the CS. The next day, in subsequent calls, Sanchez Lupercio contacted the CS to coordinate delivery of the heroin and the pills, on behalf of CC2. CC2 later that day met the CS and delivered the narcotics to the CS. The suspected heroin later lab-tested positive for approximately 1 kilogram of fentanyl, and the pills later lab-tested positive for approximately 110 grams of fentanyl. In the following days, Sanchez Lupercio met with the CS on behalf of CC2 to obtain payments for the narcotics.

On January 24, 2019, in intercepted communications, a third co-conspirator (CC3) requested Sanchez Lupercio's help in counting out pills for distribution to a fourth co-conspirator (CC4). Sanchez Lupercio went to CC3's house and delivered the pills to CC4. These pills, which were eventually seized by law enforcement, lab-tested positive for fentanyl and weighed approximately 160 grams.

Lupercio's presentence report calculated a total offense level of 27 and a guidelines range of 70 to 87 months. (Crim. Doc. 99 at ¶ 99) At sentencing, the district court departed downward from the guidelines range and sentenced him to 48 months. (Crim. Docs. 156 and 311) Lupercio filed no appeal.

II. **Analysis**

Lupercio timely moves to vacate his conviction and sentence and claims that counsel was ineffective (1) during his change of plea proceedings, for not advising him of the immigration consequences of his guilty plea, and (2) at

2

sentencing, for not advocating for a minor-role adjustment, for not advocating for a safety-valve reduction, and not arguing that the COVID-19 pandemic created unsafe prison conditions.[1]

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the petitioner to demonstrate that he was denied the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 693-94. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). When evaluating

---

[1] Lupercio was represented by attorney Scott Kalisch during the change-of-plea proceedings and by attorney Jonathan Hackworth at sentencing. The record contains an affidavit from neither attorney.

performance, the district court must apply a strong presumption that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### A. Ground One

Lupercio claims that counsel was ineffective for not advising him of the immigration consequences of his guilty plea, specifically "that he would be considered an alien by the federal government and deported." (Civ. Doc. 1 at 13) He claims that "[h]ad [he] known about the deportation consequences, he would have proceeded to trial" because "the consequences of losing his home forever were much graver to [him] than prison time." (*Id.* at 14) He explains that he has resided in the United States since 1979, and his native country of Mexico is "a completely foreign place to [him] after his 40+ years absence." (*Id.*)

"In *Padilla* [*v. Kentucky*, 559 U.S. 356, 374 (2010)], the Supreme Court held that the Sixth Amendment right to effective assistance of counsel requires counsel to 'inform her client whether his plea carries a risk of deportation.'" *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020). "Immigration law

4

is complex, and '[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences.'" *Id.* (quoting *Padilla*, 559 U.S. at 369). "'But when the deportation consequence is truly clear,' counsel has a 'duty to give correct advice.'" *Id.* (quoting *Padilla*, 559 U.S. at 559).

Lupercio pleaded guilty to conspiring to possess with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Because Lupercio was convicted of an offense relating to a controlled substance, his deportation is "presumptively mandatory." *Padilla*, 559 U.S. at 369; *see* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law . . . relating to a controlled substance . . . is deportable."). And, as a result, counsel was required to advise him that his guilty plea "may carry adverse consequences," including deportation. *See Martin*, 949 F.3d at 667.

Lupercio claims that counsel failed altogether to offer any advice about the immigration consequences of his guilty plea. If true, such fact would show that counsel's performance was deficient. *See Hernandez v. United States*, 778 F.3d 1230, 1233 (11th Cir. 2015) (concluding that counsel's advice that the defendant would not be deported was deficient when the defendant pleaded guilty to trafficking in controlled substances).

5

Accepting as true that counsel neglected to advise Lupercio of the adverse immigration consequences of his guilty plea, this claim nevertheless fails because Lupercio neglects to show he was prejudiced by counsel's performance. The record shows that the plea agreement and plea colloquy cured counsel's presumed deficient performance. *See Kealy v. United States*, 722 F. App'x 938 (11th Cir. 2018) (finding that the defendant was not prejudiced by counsel's alleged failure to advise her of the immigration consequences of her plea because the plea agreement and plea colloquy sufficiently notified her that her offense subjected her to deportation). Lupercio reviewed and initialed each page of his plea agreement with counsel including the "Immigration Consequences of Pleading Guilty" provision, which states, "The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." (Crim. Doc. 135 at 14) At his plea hearing, Lupercio confirmed that he reviewed the plea agreement with counsel and understood it entirely. (Crim. Doc. 428 at 6–7)

During his plea hearing, Lupercio twice acknowledged he understood he faced possible deportation (Crim. Doc. 428 at 18 and 25):

>THE COURT:   I will tell you that as a result of a conviction for this offense you could lose your ability to live in this country

|            |                                                                                                                                                                                                                 |
|------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | and you could be deported. Do you understand that?                                                                                                                                                              |
| LUPERCIO:  | I understand that, sir.                                                                                                                                                                                         |
| . . .      |                                                                                                                                                                                                                 |
| THE COURT: | I want to emphasize that . . . I've already mentioned it, but he's subject to being deported or excluded or otherwise removed and never being able to come back in here lawfully. Do you understand that?       |
| LUPERCIO:  | Yes, Your Honor.                                                                                                                                                                                                |
| THE COURT: | Okay. . . . [D]o you have any question about that?                                                                                                                                                              |
| LUPERCIO:  | No, Your Honor.                                                                                                                                                                                                 |

The record shows Lupercio received sufficient notice from both the plea agreement and the plea hearing that his offense subjected him to possible deportation, and therefore, he cannot show that counsel's presumed deficient advice prejudiced him. *See Kealy*, 722 F. App'x at 946 ("A defendant is not at liberty to ignore the documents [he] signs or the instructions provided by the district court.").

Furthermore, Lupercio's claim that he would have proceeded to trial if he understood the deportation consequences is insufficient to show he was prejudiced by counsel's performance. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Lupercio points to nothing in the record to substantiate his *post hoc* assertion that he would

have proceeded to trial. *Cf. id.* (finding that the record showed "deportation was the determinative issue in Lee's decision whether to accept the plea deal" because he "asked his attorney repeatedly whether there was any risk of deportation").

### B. Ground Two

Lupercio claims that counsel was ineffective at sentencing for three reasons. First, he claims counsel was ineffective for "not establishing that [he] was a minor player in the conspiracy." (Civ. Doc. 1 at 15) He argues that he "did not know anyone but one person involved in the scheme, had no knowledge of the scope of the conspiracy, or know what kind of drug he was supposed to be involved with, other than it was pills called 'roxys.'" (*Id.*) Lupercio erroneously argues that counsel "never brought up these issues at sentencing, and did not argue for [his] minimal involvement or what [he] was individually responsible for." (*Id.*)

The record refutes this claim. Counsel objected to the computation of the total offense level because it failed to include a two-level downward adjustment for Lupercio's minor role in the offense under U.S.S.G. § 3B1.2. (Crim. Doc. 301 at 23–29) He argued that Lupercio's involvement in the conspiracy was "limited" and that Lupercio's codefendant, whose actions were similar in scope and gravity, received a minor role adjustment. (*Id.* at 23)

At sentencing, counsel repeated his argument for a minor-role adjustment:

> [P]ursuant to 3B1.2 of the Federal Sentencing Guidelines Manual, [Lupercio] is entitled to a two level reduction. . . . [Lupercio's] knowledge about the extensiveness of the scope [of the conspiracy] was quite literally limited to his own involvement. . . . [H]e's so interchangeable that he was only used twice and then quite literally dumped to the sidelines. . . . [H]e had no ability to plan anything. He wasn't an organizer. He wasn't a manager. . . . In fact, when he attempted to deliver those drugs, they ultimately . . . were later provided by someone else because he couldn't. . . . [H]e really exercised no decision-making authority, . . . because he wasn't able to deliver the drugs, someone else did. . . . [He]e had no planning, no control, he had no specialized knowledge, he had no specialized training. He counted and occasionally drove. . . . He quite literally took things to where he was supposed to and that's it. He's tantamount to a runner in this type of case.

Although acknowledging that it was a "close call," the United States opposed a minor-role adjustment, arguing that Lupercio was not substantially less culpable than the average participant in the conspiracy. (Crim. Doc. 430 at 12) Ultimately, the district court rejected counsel's argument for a minor-role adjustment, reasoning, "[Y]ou want him to be a minor role, right? But everyone wants a minor role in this . . . .[Lupercio] . . . picked up the pills from [a coconspirator] and transported them[.]" (Crim. Doc. 430 at 8 and 18)

Counsel's unsuccessful argument for a minor-role adjustment does not constitute deficient performance.  "The mere fact that counsel was unsuccessful in making certain arguments, does not, without more, direct a

9

finding that counsel's performance was constitutionally deficient." *United States v. Walker*, No. 3:08-cr-87, 2015 WL 4389939, at *8 (N.D. Fla. July 15, 2015); *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel"). Indeed, Lupercio does not suggest what more counsel could have argued to support a minor-role adjustment.

Next, Lupercio erroneously claims that counsel was ineffective at sentencing for not obtaining a two-point safety valve decrease under U.S.S.G. § 2D1.1(b)(18) for which he was eligible. (Civ. Doc. 1 at 15) However, he is entitled to no relief on this claim because the presentence report shows that he, in fact, received a two-level decrease under § 2D1.1(b)(18) because he met the criteria set forth in U.S.S.G. § 5C1.2. (Crim. Doc. 301 at ¶ 53)

Finally, Lupercio vaguely complains that counsel was ineffective at sentencing for not "explaining how BOP (and Coleman Low, specifically), were failing to manage the Coronavirus," and as a result, he contracted the illness. (Civ. Doc. 1 at 16) Construing this claim liberally, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), he claims counsel was ineffective for not requesting placement in a particular prison. However, such claim is refuted by the record which shows that counsel, at Lupercio's direction, requested that he be incarcerated at FCI Coleman "so he can see his family on a 90 day furlough, if permitted." (Crim. Doc. 430 at 34) And, Lupercio neglects

10

to provide any details regarding the prison conditions at FCI Coleman or when he contracted the illness, which are circumstances that occurred *after* sentencing.[2] A petitioner is not entitled to relief when his claim is merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

## III. Conclusion

Lupercio's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Lupercio, close this case, and enter a copy of this order in the criminal case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Lupercio is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional

---

[2] To the extent Lupercio intends to challenge the conditions of his confinement, such claim is not cognizable under § 2255. *See Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991). Instead, any such conditions-of-confinement claim must be brought under 28 U.S.C. § 2241 in the district court where he is incarcerated. *See id.* (citing 28 U.S.C. § 1391(e)).

11

right." To merit a certificate of appealability, Lupercio must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Lupercio is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Lupercio must obtain permission from the circuit court to appeal in forma pauperis.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of January, 2024.

**TOM BARBER**
**U.S. DISTRICT JUDGE**